## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

JUSTIN MCCLAIN,

      Plaintiff,

v.                            Case No: 1:17-CV-00014-MW-GRJ

ULTIMATE TOWING OF
GAINESVILLE, INC., a Florida
Corporation, and STEPHEN
J. O'GRADY,

         Defendants.

_____/

## DEFENDANTS ULTIMATE TOWING OF GAINESVILLE, INC. AND STEPHEN J. O'GRADY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

      Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants, Ultimate Towing of Gainesville, Inc. and Stephen J. O'Grady (collectively "Defendants") move for final summary judgment for all claims brought by Plaintiff Justin McClain against Defendants and  file the following Memorandum of Law in support of this Motion.

## I.    SUMMARY OF THE CASE.

      Plaintiff brought the instant lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq*. alleging that Defendants failed to pay him time and a half for the work that he performed in excess of forty hours per workweek.

Plaintiff at all times was a tow truck driver for Defendants.  (*See* Doc. No. 1).

However, Plaintiff is not entitled to overtime pursuant to the Motor Carrier Act

("MCA") exemption to the FLSA. 29 U.S.C. § 213(b)(l).  Specifically, section

213(b)(l) states that the overtime provision of the FLSA does not apply to "any

employee with respect to whom the Secretary of Transportation has power to

establish qualifications and maximum hours of service pursuant to the provisions

of section 31502 of Title 49." *Id.*  As described herein in detail, the tow truck

drivers of Defendant Ultimate Towing are subject to the Secretary of

Transportation's authority and Plaintiff's business-related activities directly affect

the safety of operation of motor vehicles in transportation on the public highways

of passengers or property in interstate commerce and, therefore, are exempted from

the FLSA.  In fact, the Department of Labor made a specific finding that the tow

truck drivers of the predecessor owner of Defendant Ultimate Towing were exempt

from the FLSA pursuant to the MCA many years ago.

## II.   <u>STATEMENT OF FACTS</u>.

1.    Defendant Ultimate Towing of Gainesville, Inc. ("Ultimate Towing")

is a Gainesville-based tow truck company, providing towing services through

various customers, including but not limited to contractual clients for roam towing

services as well as for emergency services, contractual clients, insurance

companies, motor clubs and associations and transportation services both in-state and across state line. (Notice of Exhibits, Exhibit A, ¶3, Exhibit B¶7).

2.      Defendant Stephen J. O'Grady ("O'Grady") is the President of Defendant Ultimate Towing.  (Notice of Exhibits, Exhibit A, ¶4).

3.      Defendant Stephen J. O'Grady purchased Defendant Ultimate Towing of Gainesville, Inc. in or about April 2014 from its previous owner Stan Forron. (Notice of Exhibits, Exhibit A, ¶5).

4.      Defendant Ultimate Towing under the ownership of O'Grady continued to operate as it had under the ownership of Stan Forron including maintaining the classification of its tow truck drivers as exempt from the FLSA pursuant to the Motor Carrier Act.  (Notice of Exhibits, Exhibit A, ¶6).

5.      Such reliance was based upon a previous finding by the Department of Labor that the tow truck drivers of Elite Towing  - a company run in conjunction with and under the exact management of Ultimate Towing  -  were exempt from the FLSA pursuant to the Motor Carrier Act during a time when Ultimate Towing and Elite Towing were both owned and operated by Stan Forron.  (Notice of Exhibits, Exhibit A, ¶7).

6.      Defendant Ultimate Towing under O'Grady's ownership also continued to serve the same clients, perform the same type of work, operate the same vehicles and work across state lines.  (Notice of Exhibits, Exhibit A, ¶8).

7.     As such, during the entirety of Plaintiff's employment with Defendant Ultimate Towing, Defendant Ultimate Towing performed both in-state and out-of-state transportation services for towing vehicles. (Notice of Exhibits, Exhibit A, ¶9).

8.     O'Grady personally performed towing services for Defendant Ultimate towing and has performed towing services in interstate commerce numerous times.  (Notice of Exhibits, Exhibit A, ¶10).

9.     Tow truck drivers for Defendant Ultimate Towing transported vehicles not only within the State of Florida but also across state lines into other states and within states.   (Notice of Exhibits, Exhibit A, ¶11).

10.     Defendant Ultimate Towing's website states that they specialize in long distance towing, thereby notifying their employees and potential customers that it operates in interstate commerce.  (Notice of Exhibits, Exhibit A, ¶12).

11.     Although Defendant Ultimate Towing did not keep records of interstate tows, it has consistently towed vehicles across state lines or within other states.  (Notice of Exhibits, Exhibit A, ¶13).  In 2014, 2015 and 2016, Defendant Ultimate Towing, during O'Grady's ownership, transported approximately six to seven vehicles in interstate tow transports per month.  (Notice of Exhibits, Exhibit A, ¶13).

12.     During the relevant period, Defendant Ultimate Towing has solicited and received interstate transports from its customers.  (Notice of Exhibits, Exhibit A, ¶14).

13.     The nature of the tow truck business requires companies to maintain flexibility as the needs of its customers changes daily. (Notice of Exhibits, Exhibit A, ¶15).

14.     Defendant Ultimate Towing initially hired Plaintiff on April 7, 2017. (Notice of Exhibits, Exhibit A, ¶16).

15.     Plaintiff worked for Defendant Ultimate Towing until December 12, 2016.  (Notice of Exhibits, Exhibit A, ¶17).

16.     Plaintiff worked as a tow truck driver during his employment with Defendant Ultimate Towing. (Notice of Exhibits, Exhibit A, ¶18).

17.     Plaintiff was responsible for not only towing vehicles but also loading the vehicles onto the tow truck.  (Notice of Exhibits, Exhibit A, ¶19).

18.     Defendant Ultimate Towing under the ownership of O'Grady also continued the operations of Ultimate Towing by subjecting all tow truck drivers to perform work across state lines.  (Notice of Exhibits, Exhibit A, ¶20).

19.     As such, during the entirety of Plaintiff's employment, Plaintiff performed roam towing and was also subject to receiving tow assignments through

the dispatchers at Defendant Ultimate Towing including interstate tows. (Notice of Exhibits, Exhibit A, ¶21).

20.     The tow assignments for each of the drivers, including interstate tows, are and were assigned based on numerous factors including but not limited to location and driver's available hours. (Notice of Exhibits, Exhibit A, ¶22; Exhibit B, ¶5).

21.     All of the tows were and are distributed on an indiscriminate basis and shared by each of the tow truck drivers.   (Notice of Exhibits, Exhibit A, ¶23, Exhibit B, ¶5).  All of the drivers, including Plaintiff, were eligible to receive an interstate route during their shift.  (Notice of Exhibits, Exhibit A, ¶23). Therefore, Plaintiff could have been called upon to make an interstate trip at any time during his employment. (Notice of Exhibits, Exhibit A, ¶23).

22.     During his employment, Plaintiff as well as all other drivers drove tow trucks weighing 10,001 pounds or more, towing vehicles for Defendant Ultimate Towing. (Notice of Exhibits, Exhibit A, ¶24).

23.     While working as a tow truck driver for Defendant Ultimate Towing, Plaintiff was paid a percentage of the price charged for towing the vehicle, usually 30% of the total revenue collected by Defendant Ultimate Towing. (Notice of Exhibits, Exhibit A, ¶25).

24.     Plaintiff denies that he ever performed interstate work and Defendants' records do not evidence that he conducted interstate work.  (Notice of Exhibits, Exhibit A, ¶26, Exhibit B, ¶6).

## III.   <u>MEMORANDUM OF LAW.</u>

A.     <u>Summary Judgment Standard</u>.

On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2); *Hilburn v. Murata Elec. North Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir.1999).  In considering whether the movant has met its burden, the court views the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).  Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party "must go beyond the pleading through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is genuine issue for trial."  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

However, "[s]peculation does not create a genuine issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1191 (11th Cir.2005) (quotation omitted).  Furthermore, unsubstantiated assertions alone are not enough to withstand a

motion for summary judgment. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987); *see also Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir.2004) ("A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment.").

In this case, the summary judgment evidence establishes that the Motor Carrier Act exemption applies to Plaintiff and, therefore, his FLSA overtime claims should be dismissed as a matter of law. Furthermore, Defendant's summary judgment motion should be granted based on the doctrine of judicial estoppel. Last, even if the Court does not grant summary judgment, the statute of limitation's period for Plaintiff's claim should be limited to two years and Plaintiff should not be entitled to liquidated damages.

B.   <u>Plaintiff is Exempt From Overtime Under the FLSA Pursuant to the Motor Carrier Act Exemption</u>.

The FLSA establishes a general rule that employers are to compensate their employees for hours worked in excess of forty (40) hours per week at a rate not less than one and one-half times the regular rate paid to the employee. 29 U.S.C. § 207(a)(1). One exemption to this general rule is contained in Section 13(b)(1) of the FLSA, which provides that such overtime requirements do not apply to an "employee with whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section

204 of the Motor Carrier Act of 1935." 29 C.F.R. § 782.1(a); *see also* 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502(b)(1) and (2).

The FLSA exempts from the overtime pay requirement under the Motor Carrier Act ("MCA") exemption, "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). For the MCA exemption to apply, it is not necessary that the Secretary of Transportation actually exercise power; rather, the Secretary only needs to possess the power to regulate the employees at issue. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 678 (1947) ("[t]he Secretary ... need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply."); *Baez v. Wells Fargo Armored Serv. Corp.,* 938 F.2d 180, 181 n. 2 (11th Cir.1991) (Whether the MCA exemption applies "is dependent on whether the Secretary has the power to regulate, not on whether the Secretary has actually exercised such power.").

Section 31502 of Title 49 authorizes the Secretary of Transportation to "prescribe requirements for ... qualifications and maximum hours of service of employees of" a motor carrier or a private motor carrier. 49 U.S.C. § 31502(b)(1)-(2). Section 31502(a)(1) of Title 49 provides that § 31502(b) applies to "transportation ... described in" 49 U.S.C. § 13501. *Id;* § 31502(a)(1). Section §

13501 of Title 49 confers jurisdiction on the Secretary of Transportation over transportation by a motor carrier "on a public highway," to the extent passengers, property, or both are transported by motor carrier "between a place in ... a State and a place in another State" or "a State and another place in the same State through another State." *Id.* § 13501(1)-(2).

The Eleventh Circuit has interpreted the MCA to confer upon the Secretary of Transportation the authority " 'to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles.' " *Walters v. Am. Coach Lines of Miami, Inc.,* 575 F.3d 1221, 1226 (11th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 2343, 176 L.Ed.2d 561 (2010)(quotations omitted).   "The applicability of the motor carrier exemption 'depends both on the class to which his employer belongs and on the class of work involved in the employee's job.' " *Id.* at 1227 (quoting 29 C.F.R. § 782.2). The *Walters* Court determined that "[t]here are two requirements for an employee to be subject to the motor carrier exemption": (1) "his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA"; and (2) "the employee's business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways

10

of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* (quotation marks omitted).

In this case, as described below, both requirements are met and, therefore, Defendants are exempt from paying overtime compensation to Plaintiff.

(1)   Defendant's Business is Subject to the Jurisdiction of the Secretary of Transportation.

The first inquiry is whether the employee "[is] employed by carriers whose transportation of property by motor vehicle is subject to" the jurisdiction of the Secretary of Transportation.  29 C.F.R. § 782.2(a)(1).  In other words,  Plaintiff must have been employed by a motor carrier or motor private carrier engaged in interstate commerce.  Each is discussed below.

a.   Defendant Ultimate Towing is a motor carrier and motor private carrier.

A "motor carrier" is a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). It is undisputed that Defendant Ultimate Towing is a tow truck company that provides transportation services via towing vehicles for compensation.   *See Galera v. Relief Net Road Services, Inc.,* Civil Action No. 3:13-cv-4723-L, Doc. 41 (N.D. Tex. April 28, 2015); *D'Arpa v. Runway Towing Corp.,* 2013 U.S. Dist. LEXIS 85697, 27 (E.D.N.Y. June 18, 2013).  Further, Defendant Ultimate Towing utilized commercial motor vehicles in its business.  Specifically, Section 31132 of Title 49 defines a commercial motor

11

vehicle as a "self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle - (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132(1)(A).  In this case, Defendants provided tow trucks to its drivers to provide transports to property via tows and such trucks weighed more than 10,001 pounds. Accordingly, Defendant Ultimate Towing is a motor carrier for purposes of the MCA exemption.

In addition, Defendant is also a "motor private carrier."  "Motor private carrier" means:

> a person, other than a motor carrier, transporting property by motor vehicle when—
>
> (A) the transportation is as provided in section 13501 of this title;
>
> (B) the person is the owner, lessee, or bailee of the property being transported; and
>
> (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15).  Defendant Ultimate Towing meets all three factors as it (1) transports vehicles pursuant to Section 13501, i.e., transports property by commercial motor vehicle in interstate commerce and the vehicle used to transport property is in excess of 10,001 pounds; (2) Defendant is a bailee of the towed vehicle; and (3) the towed vehicle is being transported for bailment. *See Galera*,

Civil Action No. 3:13-cv-4723-L, Doc. 41, p. 11.   Accordingly, Defendant

Ultimate Towing is a motor private carrier for purposes of the MCA exemption.

      b.      <u>Defendant Ultimate Towing is Engaged in Interstate Commerce</u>.

At all times during Plaintiff's employment, Defendant Ultimate Towing was

and is engaged in interstate commerce. A motor carrier engages in interstate

commerce by actually transporting goods across state lines or transporting within a

single state goods across state lines that are in the flow of interstate commerce.

*Merchant's Fast Motor Lines, Inc. v. I C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976).

In addition, a motor carrier engages in interstate commerce when it travels across

state lines to transport cargo or passengers from one location to another location

out of state and then return to its originating state.  FMCSA, USDOT, Guidance for

§ 390.3, General Applicability Question No. 13.  Defendant is a motor carrier

engaged in interstate commerce because Defendant actually transports towed

vehicles across state lines and in other states outside of  Florida, for compensation.

Defendant has been transporting towed vehicles for its customers from or to

locations in other states as well as in other states, including for example, to/from or

within Georgia.  In 2014, 2015 and 2016, Defendant transported approximately six

to seven vehicles in interstate commerce each month.  Finally, throughout the

relevant time period, Defendant has solicited and received interstate work from the

companies it provides towing services.

Defendant continues to solicit and receive interstate transports today. Accordingly, Defendant Ultimate Towing was involved in interstate commerce for the purpose of the MCA exemption.

(2)  Plaintiff Engaged in Activities That Directly Affected the Highway Safety in Interstate Commerce.

The next inquiry is whether the affected employees "engage in activities that directly affect the operational safety of motor vehicles in the transport of property in interstate commerce." 29 C.F.R. § 782.2(a)(2) (citing *United States v. American Trucking Ass'ns.*, 310 U.S. 534, 553 (1940)); *Abel v. Southern Shuttle Services, Inc.*, 631 F.3d 1210, 1217 (11th Cir. 2011). In determining whether a specific employee falls within the MCA exempt class, the employee's duties are controlling and neither the employee's title or name given to the duties is controlling. 29 C.F.R. § 782.2(b)(2). In this case, Plaintiff was a tow truck driver and loader and, as shown below, his duties as such affect the operational safety of motor vehicles in the transport of property in interstate commerce.

For instance, drivers and loaders are considered among the classes of workers that affect highway safety. 29 C.F.R. § 782.2(b)(1) (citing *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, (1947); *Levinson v. Spector Motor Service*, 330 U.S. 649 (1947); *Morris v. McComb*, 332 U.S. 422, (1947)). The Secretary of Transportation has specifically determined that employees who (1) drive the motor vehicle and (2) load and unload vehicles are responsible for and affect the safety of

14

motor vehicles. 29 C.F.R. §§ 782.2(b)(1), 782.3 ("The work of an employee who is a full-duty or partial-duty "driver," as the term "driver" is above defined, directly affects "safety of operation" within the meaning of section 204 of the Motor Carrier Act whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of that act."), 782.5 ("Loaders"); *see also Garza v. Smith Intl.*, 2011 WL 835820, at *5 (S.D. Tex. Mar. 7, 2011) (noting Motor Carrier Act exemption applies to drivers, drivers helpers and loaders and granting summary judgment on the MCA exemption).

Therefore, the MCA exemption applies to Plaintiff as his job duties entailed those of a driver and loader. *See, e.g., Baez*, 938 F.2d 180 (Motor Carrier Act exemption applies to driver guards and messenger guards); *Hernandez v. Brink's Inc.*, 2009 U.S. Dist. LEXIS 2726, *10 (S.D. Fla. Jan. 15, 2009) (Plaintiffs who worked as Drivers fall within the regulation's definition of drivers who affect the safety of operation and are therefore covered by the FLSA's motor carrier exemption).

a.   <u>Plaintiff's duties as a tow truck driver affected highway safety</u>.

Plaintiff was engaged in duties affecting highway safety on a continuing basis as he was a driver and loader. Plaintiff admits he was a tow truck driver, whose job duties included driving a tow truck to pick up and deliver other vehicles to the location designated by Defendant's customers.  In order to do so, Plaintiff

was required to load the towed vehicle onto his vehicle for towing. Numerous federal courts have ruled that truck drivers, as a matter of law, affect highway safety. See, e.g., *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 666-68 (1947); *Barefoot v. Mid Am.*, 826 F. Supp. 1046, 1050 (N.D. Tex. 1993). A truck driver affects highway safety even if their driving duties constitute only a minor part of their job. *Morris v. McComb*, 332 U.S. 422, (1947); *see also Starrett v. Bruce*, 391 F.2d 320 (10th Cir. 1968); *Kerr v. Jeans*, 193 F.2d 572 (5th Cir. 1952); 29 C.F.R. § 782.2(b)(2) (2001). In this case, tow truck driving was the majority of Plaintiff's responsibilities for Defendant Ultimate Towing. Therefore, Plaintiff's duties as a tow truck driver affected highway safety for purposes of the MCA exemption.

Federal courts have also ruled that loaders affect highway safety. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir. 2002) (quoting 29 C.F.R. § 782.5(a), and citing Levinson, 330 U.S. at 673) ) (The Secretary of Transportation's authority extends to "employee[s] of a motor private carrier whose duties include loading and unloading motor vehicles 'so that they may be safely operated on the highways of the country.'").  An employee qualifies as a loader if he "has responsibility when . . . motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate . . . commerce will not be

jeopardized." *Id*. (quoting 29 C.F.R. § 782.5(a)).  Plaintiff was not only required to

drove the tow truck but he was also required to load the towed vehicles onto the

tow truck using his own judgment and discretion to ensure  the towed vehicle was

loaded properly and safely to further ensure safe operation of the tow truck.

Accordingly, Plaintiff's duties as a loader affected highway safety for purposes of

the MCA exemption.

> b.    Plaintiff had a reasonable expectation to engage in interstate
>        commerce.

To determine whether an employee is likely to be called upon in the ordinary

course of their work to perform activities that are interstate in nature, the inquiry is

whether the employee could "reasonably have been expected to [engage] in

interstate commerce consistent with their job duties." *Coil Tubing Servs.*, 755 F.3d

at 284 (citing *Songer*, 618 F.3d at 476). As such, a driver does not need to

personally engage in interstate transportation to be exempt, instead it depend only

on the class of work involved in the employee's job pursuant to a company-wide

analysis. *Coil Tubing Servs.*, 755 F.3d at 284-285 (citing *Songer*, 618 F.3d at 472).

In this case, Defendant Ultimate Towing performed interstate transportation and

assigned such interstate tows indiscriminately among its tow truck drivers based on

a variety of factors including availability, location and scheduling.  It is of no

consequence that Plaintiff did not actually perform interstate tows as that is not the

inquiry.  Instead, if Plaintiff was "subject to" driving in interstate commerce he is

covered by the MCA exemption - even though his regular job duties do not require them to actually cross state lines. *Morris v. McComb*, 332 U.S. 422, 434-36 (1947) (finding that all drivers were subject to the MCA exemption even though two of the forty-two had never engaged interstate commerce); *Barefoot v. Mid-Am.*, 826 F. Supp. 1046, 1049 (N.D. Tex. 1993), *aff'd*, 16 F.3d 1216 (5th Cir. 1994); 29 C.F.R. § 782.2(b)(3) (if the employee's job duties are "such that he is (or ... is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities" of a driver, he comes within the MCA exemption "in all workweeks when he is employed at such job.").

Additionally, in 1981, the Department of Transportation published a position in the  Federal Register, Vol. 46, No. 141, stating that if employees make an interstate trip, or otherwise engage in exempt interstate activities, or even could be called upon to make an interstate trip or otherwise engage in exempt activities, they would be considered subject to Department of Transportation regulation, and so be exempt, for four (4) months from the time they were so engaged or could be called upon to become so engaged. The Department of Labor further, adopted this position in its Field Operations Handbook (FOH), which contains its interpretations of the laws it enforces. The FOH asserts that "evidence of interstate activity would be accepted as proof that the driver is subject to section 204 of the MCA for a four month period beginning with the date they could have been call

upon, or actually did, engage in the carrier's interstate activity." DOL Field Operations Handbook, 24e01(b)(2).

In this case, Plaintiff worked as a tow truck driver and loader for the duration of his employment with Defendant. Plaintiff's duties as a driver and loader entailed the possible transportation of vehicles in interstate commerce from the time he commenced his employment with Defendant until his employment ended. Therefore, at all times during his employment, Plaintiff could have been assigned an interstate tow and should have reasonably expected the same. Accordingly, Plaintiff belonged to the class of drivers and loaders subject to the MCA exemption.

Illustrative of the laws and holdings set forth above to the instant case is the case of *Galera v. Relief Net Road Sevices, Inc.* which is directly on point. For instance, that case involved a tow truck driver alleging failure to pay overtime under the FLSA against his employer who was a Dallas based company. The defendant alleged that the plaintiff was exempt from the overtime provisions of the FLSA under the MCA exemption. The defendant submitted affidavit evidence stating that during the three years in question, defendant performed 17 interstate tows, 28 interstate tows and 35 interstate tows and such tow assignments were assigned indiscriminately. Plaintiff countered that he never engaged in interstate

activity and had been advised upon hire that he would only work at the Dallas-Fort Worth Metroplex.

The court first determined whether the defendant was a motor carrier and found that defendant was a motor carrier or motor private carrier based on the defendant's affidavit evidence as to traveling interstate. The court also determined that the defendant was a motor private carrier based on the bailee/bailment relationship a towing company has with its clients. As such, the court determined that the defendant was subject to the Secretary of Transportation. The court also determined that plaintiff's responsibilities affected motor vehicle safety "in the transportation on the public highways of persons or property in interstate … commerce." Specifically, the court found that it did not matter that the plaintiff did not personally engage in interstate commerce as the correct inquiry was whether the employee could reasonably have been expected to [engage] in interstate commerce consistent with [his] job duties." The court ultimately determined that based on the defendant's affidavit evidence, the MCA exemption applied as defendant engaged in interstate commerce and such interstate travel was indiscriminately assigned to any one of the company's drivers. As such, the court granted defendant's motion for summary judgment.

Applying the case law above to the instant case, Plaintiff is exempt from the FLSA pursuant to the MCA exemption.  First, Defendant is a motor carrier and a motor private carrier.  It is undisputed that Defendant provided motor vehicle transportation for compensation and has a bailee/bailment relationship with its clients.  It is also undisputed based on the affidavits submitted in support of this Motion for Summary Judgment that Defendant Ultimate Towing engages in interstate commerce.  Second, the Plaintiff's responsibilities affected motor vehicle safety on the public highways of persons or property in interstate commerce regardless of whether he personally engaged in the same.  Again, Defendant has submitted affidavit evidence that it performs interstate work and such interstate tows are assigned indiscriminately.  As such, Plaintiff could have reasonably expected to be assigned an interstate tow as part of his responsibilities.  Accordingly, the MCA exemption applies to Plaintiff and, therefore, Defendant's Motion for Summary Judgment should be granted.

C.   Plaintiff is Judicially Estopped From Bringing His Claim Against Defendants.

The doctrine of judicial estoppel should prevent Plaintiff from pursuing his claim against Defendants as a result of his representations made to the Court of the Eighth Judicial Circuit, in and for Alachua County, in the criminal case of *State of*

*Florida v. Justin McClain*; Case No. 16-CT-1884 (the "Criminal Case").[1]  "The purpose of judicial estoppel is 'to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment.'" *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (*quoting New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  Courts within this Circuit consider the following factors when determining whether judicial estoppel applies "(1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; (3) whether the party advancing the inconsistent position would derive an unfair advantage." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (*citing New Hampshire*, 532 U.S. at 750-51).  Judicial estoppel may apply where "the allegedly inconsistent positions were made under oath in a prior proceeding" and "such inconsistencies [are] shown to have been calculated to make a mockery of the judicial system." *Id.* (*quoting Burnes*, 291 F.3d 1282 (11th Cir. 2002) (internal quotation marks omitted)).

Plaintiff asserts in this case that he is owed overtime wages in the amount of $27,726, plus attorneys' fees and costs.  However, in  the Criminal Case, Plaintiff

---

[1]  A court can take judicial notice of documents that were filed in a state court proceeding. *See Coney v. Smith,* 738 F.2d 1199, 1200 (11th Cir.1984).

submitted a sworn affidavit attesting to his insolvency on September 16, 2016.

Plaintiff was found guilty in that case and has since appealed the case and has been

assigned a case number of 01-2017-AP-18.   In the appeal, on June 20, 2017,

Plaintiff   renewed his application for insolvency and adopted his previous

Application for Criminal Indigent Status which fails to mention his claim in this

case that he is entitled to money.

Although the application of judicial estoppel is most commonly used where

an individual has failed to disclose a claim in litigation as an asset in the

individual's separate bankruptcy proceeding, at least one court has considered the

present scenario and found that judicial estoppel applies.   Specifically, in

*Shayesteh v. Raty*, 404 Fed.Appx. 298 (10th Circuit 2010), the Tenth Circuit

applied the doctrine of judicial estoppel to dismiss a plaintiff's claims in a civil suit

where the plaintiff asserted a claim of indigence in a criminal appeal in which he

was adjudicated guilty.   The Tenth Circuit found that plaintiff's assertion that he

was indigent was clearly inconsistent with the claims in the civil case in which he

alleged he possessed significant amounts of money that were stolen.   Importantly,

the plaintiff had successfully persuaded the criminal court to accept his indigent

status and, therefore, the court reasoned that allowing him to proceed with a claim

that he was not in fact indigent   would allow him the benefit of misleading the

criminal court.   Last, the court found that allowing the present case to move

forward while overlooking inconsistent statements to the court which were relied upon would provide the plaintiff an unfair advantage.

Applying the reasoning of the case law above, Plaintiff should be judicially estopped from pursuing his claims against Defendants due to the inconsistent sworn position provided in his Criminal Case.  The court in that case granted his motion to proceed as insolvent and assigned a public defender to pursue his appeal.  This position is clearly at odds with Plaintiff's position in this case that he is owed over $27,000.  Last, similar to the case of *Shayesteh,* allowing the present case to move forward while overlooking inconsistent statements to the criminal court which were relied upon would provide the Plaintiff an unfair advantage.

Accordingly, the doctrine of judicial estoppel should be applied against Plaintiff resulting in a dismissal of his claims against Defendants.

D.   <u>The Statute of Limitations on Plaintiff's Claims Under FLSA Should be Limited to Two Years</u>.

Even if this Court does not grant Defendant's Motion for Summary Judgment, the statute of limitations relevant to his claims should be limited to two years.  Specifically, the FLSA generally provides a period of two years "after the cause of action accrued" in which to file a Complaint for overtime wages or liquidated damages. 29 U.S.C. § 255(a). However, upon a showing that Defendant's failure to comply with the FLSA was willful, the limitations period is extended an additional year. 29 U.S.C. § 255(a).  A violation of the FLSA is

considered willful if the defendant either knew its conduct violated the FLSA or showed reckless disregard for whether its actions complied with the Act. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Thus, even if an employer acts unreasonably in determining its obligations under the FLSA, its actions will not be deemed willful in nature. *Id.* at 135. Plaintiff bears the burden to prove a willful violation and willfulness cannot be presumed. *See Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).

In this case, not only has Plaintiff not presented any evidence of willfulness, Defendants have shown that the classification of the tow truck drivers was based on a prior Department of Labor determination finding that such drivers were exempt under the MCA.  Specifically, Defendant O'Grady purchased a turn key tow truck company from its predecessor Stan Forron.  Upon purchase, the tow truck drivers were classified as exempt under the MCA exemption and Defendants continued such classification based upon a previous finding by the Department of Labor that the tow truck drivers of Elite Towing  - a company run in conjunction with and under the exact management of Ultimate Towing  -  were exempt from the FLSA pursuant to the MCA during a time when Ultimate Towing and Elite Towing were both owned and operated by Stan Forron.  At no time since purchasing Defendant Ultimate Towing did the services it provided alter including the types of trucks used, the amount of interstate commerce engaged in and the

25

assignment of such interstate tows.   Accordingly, Defendant's classification of Plaintiff as exempt from the FLSA pursuant to the MCA exemption was not willful and, therefore, a two year statute of limitations should apply.

E.   <u>Defendant Classified Plaintiff Exempt Based on a Good Faith Belief</u>.

An employer who violates the FLSA's overtime provisions is liable to the employee for the employee's unpaid overtime compensation and for liquidated damages equal to that unpaid overtime compensation. 29 U.S.C. § 216(b). If, however, "the employer shows to the satisfaction of the court that the act or omission giving rise to [the violation] was in good faith and that [it] had reasonable grounds for believing that [the] act or omission was not a violation[,] . . . the court may, in its sound discretion, award no liquidated damages." 29 U.S.C. § 260; *see also Spires v. Ben Hill Cty*., 980 F.2d 683, 689 (11th Cir. 1993) ("[L]iquidated damages are mandatory absent a showing of good faith."). The good faith defense to liquidated damages requires "an employer [to] show that it acted with both objective and subjective good faith. " *Rodriguez v. Farm Stores Grocery*, *Inc*., 518 F.3d 1259, 1272 (11th Cir. 2008).

In this case, Defendants relied in good faith on the correct classification of the tow truck drivers upon the purchase of the Defendant Ultimate Towing. Defendants further relied on the previous Department of Labor determination as discussed above.  As such, Defendants had both an objective and subjective good

faith belief that the Plaintiff was classified correctly.  Accordingly, no liquidation damages should be awarded.

## IV.    <u>CONCLUSION.</u>

For all of the reasons stated herein, Plaintiff Justin McClain is exempt under the Motor Carrier Act exemption from overtime under the FLSA.  Furthermore, the doctrine of judicial estoppel should be applied against Plaintiff resulting in a dismissal of his claims against Defendants.   Defendants Ultimate Towing of Gainesville, Inc. and Stephen O'Grady therefore respectfully request an entry of an order granting summary judgment with prejudice on Plaintiff's claims.  Defendants further request any other relief, either in equity or at law, to which Defendants may be justly entitled.

### <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

The undersigned certifies that this Motion for Summary Judgment and Memorandum in Support Thereof does includes  exceed  no more than 6, 062 words as determined by my word processing application.

PASTORE & DAILEY, LLC

/s/  Michele F. Martin
Michele F. Martin
Florida Bar No. 474940
500 East University Drive, Suite C
Gainesville, Florida 32601
Tel.: (352) 316-6955
Mmartin@psdlaw.net

Attorneys for Stephen J. O'Grady and
Ultimate Towing of Gainesville, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 10, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

Michael Owen Massey
masseylaw@gmail.com

/s/ Michele F. Martin
Attorney